UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DONALD E.[1]

                Plaintiff,

      v.

COMMISSIONER, Social Security
Administration,

                Defendant.

_____

Case No. 3:19-cv-00649-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Donald E. ("Plaintiff") filed this action under section 205(g) of the Social Security

Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner

of Social Security (the "Commissioner") who denied him social security disability insurance

benefits ("DIB") and supplemental security income ("SSI") (collectively "Benefits").  This court

finds the Commissioner erred in the application of *res judicata*, rejection of Plaintiff's subjective

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

testimony, rejection of Dr. Nakashima's medical opinion, and application of the limits in the vocational expert's hypothetical. Accordingly, the Commissioner's final decision is reversed for immediate award of benefits.[2]

### Procedural Background

Plaintiff first applied for Benefits on August 10, 2012, alleging an onset date of March 15, 2011. The application was denied initially and denied on reconsideration. On August 12, 2014, Plaintiff appeared at a hearing (the "2014 Hearing") before Administrative Law Judge Kelly Wilson ("ALJ" or "ALJ Wilson"). After hearing testimony from Plaintiff and vocational expert Patricia Ayerza ("VE" or "Ayerza"), ALJ Wilson determined Plaintiff was not disabled under the Act in a 2014 decision.

On or about July 22, 2016, Plaintiff filed a second application for Benefits alleging an onset date of November 1, 2014. The application was denied initially, denied on reconsideration, and then denied by ALJ Jo Hoenninger ("ALJ Hoenninger") in a 2018 decision after a hearing on April 10, 2018 (the "2018 Hearing"). The Appeals Council denied review and ALJ Hoenninger's decision became the final decision of the Commissioner.

### Factual Background

Plaintiff is forty-two years old. He graduated from high school and his past relevant work experience includes work as a retail sales clerk and a desk clerk. Plaintiff has not been involved in a successful work attempt since August 2012. Plaintiff alleges disability because of a combination of impairments, including seronegative inflammatory arthritis, obesity, and fibromyalgia. Plaintiff last met the insured status entitling him to DIB on December 31, 2015.

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

I.  Testimony

In the Function Report Plaintiff completed on August 9, 2016 (the "Function Report"), he reported he lives alone and is able to complete some household chores and generally take care of himself, but his ability to do so varies from day to day.  (Tr. of Social Security Administrative R., ECF No. 12 ("Admin. R."), at 257.)  He shops for groceries with assistance once per month on average and he testified this is the extent to which he goes outside.  (Admin. R. at 260.)  Plaintiff passes time by reading, watching movies, and listening to music.  (Admin. R. at 260-61.)  He testified his condition varies each day because his previous day's activities affect his ability to participate in activities the next day, such as walking, reaching, and bending, and on his pain level across all of his joints.  (Admin. R. at 257.)  Plaintiff cannot walk farther than fifty feet at a time before resting and does not drive because he cannot turn his head.  (Admin. R. at 260.)  He testified his once-active social life is now non-existent.  (Admin. R. at 262.)  His Humira and Oxycodone prescriptions have caused him additional fatigue.  (Admin. R. at 263.)

At the 2018 Hearing, Plaintiff reported his condition generally has worsened since the 2014 Hearing.  (Admin. R. at 42.)  While ALJ Wilson previously found in 2014 Plaintiff had a positive response to his medication, corroborated by his physicians, and he even sought work in the prior adjudicated period, on this point Plaintiff's testimony differs.  He testified his condition is now more unpredictable and he is even less dependable for work purposes.  (Admin. R. at 43.)  He said he experiences more frequent flares of pain, lasting up to twice as long as they had previously.  (*Id.*)  When Plaintiff experiences a flare-up, he is unable to do anything around the house, and is barely able to walk.  (Admin. R. at 50.)  He also needed more frequent steroid injections starting in 2014 to help him manage intensifying flare-ups.  (Admin. R. at 52.)

Plaintiff's mobility is largely dependent on his sleep.  (Admin. R. at 44.)  His sleep has been negatively affected by his condition, and poor sleep in turn negatively affects his next day. (Admin. R. at 44.)  Sometimes, his joints lock and he is unable to move from his position in bed. (*Id.*)  Plaintiff stated his ability to do activities, household or otherwise, depends on his ability to get enough sleep the night before.  (Admin. R. at 50.)  On bad days, he has difficulty moving upon waking up because one-to-two hours are needed for his joints to be mobile enough to function. (Admin. R. at 43-44.)  Plaintiff testified that because of the unpredictable nature of his condition, he feels "less dependable," and he would not hire himself, given his inability to predict when he will be able to show-up for work.  (Admin. R. at 53-54.)  He also experienced episodes of nausea and vomiting lasting twenty-four hours to two days.  (Admin. R. at 53.)  Since the 2014 hearing, his symptoms have been treated with a new medication.  (Admin. R. at 45.)

## II.  Medical Evidence

Since the 2014 Hearing, Plaintiff's C-reactive protein level (a measure of inflammation in the body) has risen.  According to treating physician James Nakashima, M.D. ("Dr. Nakashima"), a February 11, 2015 sample revealed a higher C-reactive protein level than existed in 2013, before the 2014 Hearing.  (*See* Admin. R. at 336-38.)  Treatment for inflammatory arthritis and possible Sjogren's syndrome began on April 9, 2014, and Humira injections every two weeks helped Plaintiff with his pain and swelling.  (Admin. R. at 325.)  On October 8, 2014, his inflammation and pain, and tenderness across the joints of the hands, wrist, shoulders, and hips, led Dr. Nakashima to restart Plaintiff on the drug methotrexate to treat arthritis.  (Admin. R. at 327.)  Dr. Nakashima's notes from February 11, 2015, show his increased joint pain yielded a positive response to 14 of the 18 fibromyalgia tender points.  As a result, he diagnosed Plaintiff with fibromyalgia in addition to the existing arthritis diagnosis.

On July 23, 2014, Robert Law, M.D. ("Dr. Law"), noted Plaintiff had increasing episodes of nausea and vomiting.  (Admin. R. at 380.)  Another episode of nausea and vomiting took Plaintiff to the emergency room on March 21, 2015.  (Admin. R. at 552.)  By September 2015, Dr. Law noted his condition was relatively stable (Admin. R. at 361), but on December 21, 2015, Plaintiff complained to Dr. Law of further nausea.  (Admin. R. at 355.)  By February 2016, Plaintiff's pain was worsening, and Dr. Nakashima increased his dosage of methotrexate accordingly.  (Admin. R. at 332.)  His nausea and vomiting partially subsided in March 2016 (Admin. R. at 349); however, Dr. Law noted these bouts of severe nausea and vomiting occurred every three-to-six months, some of which were caused by oral steroids provided to treat a recent pain flare.  (Admin. R. at 340.)

The increased dose of methotrexate did not help enough, and Plaintiff experienced more pain flares on June 20, 2016, and September 15, 2016, which were then treated with steroid injections.  (Admin. R. at 333, 340.)  On December 13, 2016, Dr. Nakashima treated his with a steroid injection to reduce the increased pain and swelling that occurred over the previous two months.  (Admin. R. at 474-75.)  The very next day, on December 14, 2016, Dr. Law noted the increased dose of methotrexate caused Plaintiff new gastrointestinal issues.  (Admin. R. at 404.)  On March 3, 2017, Plaintiff again sought emergency care after a several-day episode of severe nausea and vomiting.  (Admin. R. at 399, 488.)

Dr. Nakashima initially described the variability of Plaintiff's condition in 2013, explaining Plaintiff has "good days" and "bad days" (Admin. R. at 551), and he reiterated the same conclusion in an April 2018 statement.  (Admin. R. at 548.)  Within this time frame, after Plaintiff's complaints of increasing pain in June 2017 and November 2017, Dr. Nakashima found cold weather worsened his pain.  (Admin. R. at 483, 535, 537.)  He also testified Plaintiff had limited use of his hands,

fingers, and arms, no ability to handle and finger entirely, and ten percent capacity to reach forward. (Admin. R. at 547.) Dr. Nakashima testified Plaintiff cannot reach overhead, and is not able to climb ladders, crouch, or squat. (*Id.*) He stated Plaintiff can lift less than ten pounds occasionally and no more than ten pounds rarely, seldom climb stairs, and occasionally can twist or bend over. (*Id.*) Furthermore, Dr. Nakashima testified Plaintiff would require frequent breaks beyond regularly scheduled breaks in a working day. (*Id.*)

## III. Vocational Evidence

ALJ Hoenninger called Richard Hincks ("Hincks") to testify as a VE at Plaintiff's 2018 Hearing. (Admin. R. at 36.) ALJ Hoenninger asked Hincks to consider an individual limited to light work, including occasional stair and ramp use; no climbing of ladders, ropes, or scaffolds; an ability to occasionally stoop, kneel, crouch, and crawl; an ability to frequently handle and finger bilaterally; and a need to avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. (Admin. R. at 61.) At the 2014 Hearing, Ayerza had identified Plaintiff's past work of retail sales clerk and a desk clerk. (Admin. R. at 59-60.) At the 2018 Hearing, Hincks testified both jobs constituted light work, as did production assembler, electronics worker, and office helper jobs, all of which would be suitable for Plaintiff. (Admin. R. at 61-62.)

Hincks also considered the additional hypothetical whether an employee who missed two or more days of work each month and was off-task twenty-five percent of the workday, would render them able to sustain competitive employment. (Admin. R. at 62-63.) Hincks testified neither hypothetical limitation would allow a person to sustain competitive employment. (*Id.*) Hincks stated that such hypothetical limitations, when combined with the limitations of occasional reaching, handling, and fingering activity, would result in no suitable work for an individual with those limitations. (Admin. R. at 65.)

IV.  ALJ Decision

ALJ Hoenninger found Plaintiff had not rebutted the presumption of nondisability. (Admin. R. at 19.)  Based on his previous application for Benefits and subsequent 2014 Hearing, ALJ Wilson found Plaintiff was not disabled, giving rise to a presumption of nondisability which ALJ Hoenninger upheld in her decision.  In concluding Plaintiff had not rebutted the presumption, ALJ Hoenninger determined that the record did not support the requisite "changed circumstance," notwithstanding a new diagnosis which the ALJ concluded merely was a new name for the existing conditions.  (*Id.*)  In finding Plaintiff's condition had not increased in severity, ALJ Hoenninger also relied on evidence demonstrating his medication stayed, "for the most part," the same.  (*Id.*) Accordingly, LJ Hoenninger adopted ALJ Wilson's 2014 description of Plaintiff's residual functional capacity ("RFC"), and determined the record as a whole continued to support a finding of nondisability.  (*Id.*)

ALJ Wilson based his RFC determination on a more recent period during which Plaintiff had been employed, was able to drive, and managed personal care and cleaning with only some trouble.  (Admin. R. at 82.)  He gave little weight to subjective evidence from Plaintiff, his mother, and his treating physician Dr. Nakashima.  (Admin. R. at 81-82.)  ALJ Wilson found Plaintiff able to do at least some light work, found his test results did not reveal acute or chronic abnormalities which would preclude said work, and found effective his "relatively conservative" treatment for his ailments.  (Admin. R. at 80-82.)  Therefore, ALJ Wilson found Plaintiff's claims not entirely credible.  (Admin. R. at 82.)

ALJ Hoenninger acknowledged Plaintiff's claim of inability to work due to rheumatoid arthritis in the spine, fibromyalgia, and Sjogren's syndrome.  (Admin. R. at 23.)  Although conceding his impairments reasonably could be expected to cause the alleged symptoms, ALJ

Hoenninger concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (*Id.*) Based on Plaintiff's past relevant work, residual functional capacity, and the hypothetical question posed to Hincks at the 2018 Hearing, ALJ Hoenninger considered Plaintiff capable of performing light work. (Admin. R. at 28-29.) ALJ Hoenninger concluded that Plaintiff's age, education, work experience, limitations, coupled with Hincks's testimony, Plaintiff "has not been under a disability within the meaning of the Social Security Act" from November 1, 2014, through the date of this decision." (Admin. R. at 19.)

ALJ Hoenninger summarized in detail Plaintiff's medical notes from the record, beginning with the April 2014 appointment where he was diagnosed with poly arthritis and accompanying symptoms. (Admin. R. at 23.) ALJ Hoenninger acknowledged Plaintiff was treated with Humira and, in October 2014, that he was reinitiated on methotrexate. (Admin. R. at 23-24.) ALJ Hoenninger noted by February 2015, Plaintiff was diagnosed more specifically with seronegative rheumatoid arthritis, but clarified this diagnosis was based on reported symptoms despite a negative objective test. (Admin. R. at 24.) In the same February 2015 appointment, Dr. Nakashima diagnosed Plaintiff with fibromyalgia. (*Id.*) ALJ Hoenninger noted Plaintiff's condition had changed between April 2014 and December 2015, including flare-ups of pain, and also referred to his condition as "stable" and "stabilized," based on the lack of increase in medication. (*Id.*)

ALJ Hoenninger similarly contrasted Plaintiff's February 2016 complaints of increased pain in the hands, elbows, shoulders, knees, and ankles with evidence that the arthritis had "improved but continued to have residual pain and swelling." (Admin. R. at 25.) In the same appointment, Dr. Nakashima recommended an increase in Plaintiff's dose of methotrexate. (*Id.*)

ALJ Hoenninger again acknowledged Plaintiff presented with flare-ups in June 2016, and that he received a Depo-Medrol injection in addition to his other medications, Humira and methotrexate. (*Id.*) ALJ Hoenninger noted other instances of Plaintiff's "stable" conditions following flare-ups in December 2016, and in June 2017 and July 2017. (Admin. R. at 25-26.)

ALJ Hoenninger found the medical records supported Plaintiff's functional limitations as described in his RFC, but expressed concerns regarding Plaintiff's allegations about the intensity, persistence, and limiting effects of his condition. (Admin. R. at 26.) In making the RFC determination following the 2018 Hearing, ALJ Hoenninger first found no new and material evidence changed Plaintiff's RFC. (Admin. R. at 26.) Second, ALJ Hoenninger found Plaintiff's complaints remained out of proportion and concluded the complaints were not as debilitating as alleged, stating "[s]pecifically, while the claimant alleged that his symptoms have gotten worse, the medical record revealed the claimant's medications have stayed the same since his last hearing." (Admin. R. at 26.) In reaching this conclusion, ALJ Hoenninger relied primarily upon the word "stable" used in treatment notes to describe Plaintiff's general condition or his medication. (*Id.*) ALJ Hoenninger also explained her doubt about the limiting effects of Plaintiff's condition by noting his ability to take care of his hygiene, perform some household chores, shop for groceries "as needed," watch movies, listen to music, and read, all of which suggested a greater level of function than alleged. (Admin. R. at 27.)

ALJ Hoenninger also considered the medical opinions of Dr. Nakashima and of state agency medical consultants Lloyd Wiggins, M.D. ("Dr. Wiggins") and Mary Ann Westfall, M.D ("Dr. Westfall"). (Admin. R. at 27-28.) She acknowledged every medical opinion "must be considered," including those of nonexamining physicians. (*Id.*) But ALJ Hoenninger gave little weight to Dr. Nakashima's treatment notes. (Admin. R. at 27.) Dr. Nakashima opined in April

2018 on Plaintiff's functional abilities that he could stand or walk less than two hours, and sit for about four hours in an eight-hour workday. (*Id.*) He also opined Plaintiff would require the option to sit or stand, could lift and carry ten pounds rarely, and less than ten pounds occasionally, and would require additional postural and manipulative limitation. (*Id.*) Dr. Nakashima also opined Plaintiff would be off-task twenty-five percent of the time or more, and be absent from work more than four days per month.

ALJ Hoenninger found these opinions did not differ significantly from Dr. Nakashima's June 2013 opinions. (*Id.*) In his 2013 report, Dr. Nakashima had opined Plaintiff could sit for three hours and stand or walk for two hours, and would be off-task only fifteen percent of the time while missing about three workdays per month. (*Id.*) Initially, following the 2014 Hearing, ALJ Wilson gave Dr. Nakashima's opinion little weight because she found it inconsistent with the medical evidence. (*Id.*) Acknowledging Dr. Nakiashima as a treating physician, ALJ Wilson found he appeared to have based his reports on Plaintiff's subjective complaints and had not relied enough on objective medical evidence. (Admin. R. at 81.) ALJ Wilson also gave Dr. Nakashima's opinion less weight because Plaintiff's symptoms were temporarily alleviated, though they later returned. (*Id.*) Considering all of this, ALJ Hoenninger applied *Chavez*[3] and found no new and material evidence in the medical record that suggested an increase in the severity of Plaintiff's conditions since the 2014 Hearing, thereby giving Dr. Nakashima's opinion little weight once again. (Admin. R. at 26; *Chavez*, 844 F.2d at 693.)

---

[3] *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988), held that when adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continued nondisability and determine the plaintiff not disabled for this period unless the plaintiff rebuts the presumption. Relevant here, the presumption can be rebutted by showing a changed circumstance, change in symptom severity, or the existence of an impairment not previously considered.

ALJ Hoenninger gave greater weight to the two opinions of the state agency medical consultants. (Admin. R. at 28.) The consultants' medical opinions both concluded Plaintiff could stand or walk about six hours and sit about six hours in an eight-hour workday; carry ten pounds frequently and twenty pounds occasionally; and was limited to certain postural and manipulative limitations. (Admin. R. at 27-28.) Neither consultant commented on the amount of time Plaintiff would be off-task in a given day or absent from work in a month. (Admin. R. at 27-28.) ALJ Hoenninger reiterated the medical evidence showed Plaintiff's condition and medication had been generally stable; this reasonably indicated Plaintiff's condition had not worsened and supported the state agency medical consultants' opinions, who both cited *Chavez* in adopting the previous assessment. (Admin. R. at 28.)

ALJ Hoenninger also reiterated Plaintiff's ability to participate in activities such as shopping for groceries as needed, preparing meals, caring for personal hygiene, performing some household chores, watching movies, listening to music, and reading all undermined Plaintiff's assertion of disability. (Admin. R. at 28-29.) She then concluded the jobs of Production Assembler (DOT: 706.687-010), Electronics Worker (DOT: 726.687-010), or Office Helper (DOT: 239.567-010), as described by Hincks's testimony, allowed for a successful adjustment for the Plaintiff's abilities. (Admin. R. at 30.)

ALJ Hoenninger applied *Chavez* to ALJ Wilson's 2014 decision, finding Plaintiff had not rebutted the presumption of continuing nondisability. (Admin. R. at 18-19.) In applying the five-step sequential analysis, ALJ Hoenninger found at step one Plaintiff had not engaged in SGA since the alleged onset. At step two, she found Plaintiff had seronegative inflammatory arthritis, obesity, and fibromyalgia, and those impairments were severe. (Admin. R. at 21). At step three, ALJ Hoenninger found Plaintiff's impairments did not meet or equal any listed impairments, and she

adopted the RFC from the October 31, 2014 decision.  (Admin. R. at 22.)  At step four, she found Plaintiff able to return to his past relevant work as a sales clerk and a desk clerk.  At step five, ALJ Hoenninger found, in the alternative, Plaintiff could perform the occupations of production assembler (DOT #706.687-010), electronics worker (DOT # 726.687-010), and office helper (DOT # 239.567-010).  (Admin. R. at 30.)

*Standard of Review*

The Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1) (2019).  In addition, SSI may be available to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a) (2019).  The burden of proof to establish a disability rests upon the claimant.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996) (DIB); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) (2019).  An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2) (A) and 1382c(a)(3)(B) (2019).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI because of disability.  20 C.F.R. §§ 404.1520 and 416.920 (2019); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (addressing

DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (addressing SSI).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, Benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."   20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past.  If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995) (addressing DIB); *Drouin*, 966 F.2d at 1257 (addressing SSI).  The claimant is entitled to Benefits only if he or she is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3) (2019). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2019); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). The reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504

F.3d 1028, 1035 (9th Cir. 2007). A reviewing court, however, may not affirm the Commissioner

on a ground upon which the Commissioner did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009)

(citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

*Discussion*

Plaintiff asserts ALJ Hoenninger erred by applying *res judicata* to the ALJ Wilson's 2014

decision, discounting Plaintiff's subjective testimony including limitations in Hincks's

hypothetical, and rejecting Dr. Nakashima's medical opinion.

I. *Res Judicata*

Plaintiff contends ALJ Hoenninger improperly applied *res judicata* to ALJ Wilson's 2014

decision. Here, ALJ Hoenninger applied *Chavez* to ALJ Wilson's 2014 decision in finding the

continued presumption of nondisability was not rebutted. While the principles of *res judicata*

apply to administrative decisions, the doctrine is not to be applied "rigidly." *Chavez*¸ 844 F.2 at

693. According to AR 97-4(9), the presumption may be rebutted by showing a "changed

circumstance" affecting the issue of disability with respect to the unadjudicated period, such as the

increased severity of an impairment, or an alleged impairment not previously considered. *Taylor*

*v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir.

1988).

Plaintiff contends ALJ Hoenninger erred in finding the presumption of nondisability had

not been rebutted, and disputes ALJ Hoenninger's conclusion that Dr. Nakashima's report from

2018 did not differ much from his 2013 report. First, he notes Dr. Nakashima diagnosed him with

fibromyalgia, a new impairment, after ALJ Wilson's decision and before the 2018 Hearing. Dr.

Nakashima made this diagnosis on February 11, 2015, and recommended new medication at this

point.  (Admin. R. at 327-28.)  ALJ Hoenninger acknowledged this new diagnosis, but found it merely ascribed a new name to existing conditions and did not constitute an objective finding, despite Dr. Nakashima having used a medical test to diagnose the condition.  (Admin. R. at 27.) Dr. Nakashima's medical reports detail several instances of increased severity of pain and inflammation, medication changes to respond to Plaintiff's changing condition, and a 2015 C-reactive protein level higher than the 2013 level.  (Admin. R. at 330, 331-332, 333, 335, 336, 338.)

In determining the RFC in her 2014 decision, ALJ Wilson found Dr. Nakashima did not reintroduce methotrexate to Plaintiff's medications due to his improved condition.  (Admin. R. at 81.)  Since then, however, Dr. Nakashima had reinitiated Plaintiff on methotrexate in 2014, increased his dosage in 2016, and maintained him at the elevated dosage.  (*See* Admin. R. at 23-26.) This treatment course should prompt the inverse conclusion to ALJ Wilson's 2014 conclusion regarding methotrexate – the fact Dr. Nakashima reintroduced and increased the dosage of methotrexate indicates Plaintiff's condition has worsened since ALJ Wilson's decision.  This finding would depart from ALJ Hoenninger's blanket adoption of ALJ Wilson's RFC findings and presumption of nondisability.

Plaintiff's 2016 Function Report also showed a reduced range of motion in multiple joints, a reduction in Plaintiff's ability to sit, an increased need for breaks during the workday, the need for occasional use of a cane, a reduction in the ability to reach, new side effects from Plaintiff's medications, an increase in the number of expected absences from three absences to four each month, and the added expectation Plaintiff's symptoms would cause him to be off-task for about twenty-five percent of the workday.  (*Compare* Tr. 549-51 (2013 opinion) with Tr. 545-48 (2018 opinion).)  The Commissioner, ignoring a decline in Plaintiff's condition, argues "common sense" dictates a claimant must do more than provide redundant evidence and any new evidence of

deterioration must be apparent or clear.  Accordingly, the Commissioner argues the application of *res judicata* is proper because the intent of the *Chavez* doctrine is that of a "paper tiger":  reducing the relevant standard to a principle which exists to conserve resources and describing it as ineffectual with this analogy.  (*Id.*)  This argument is not persuasive, because evidence of a changed circumstance, including the existence of a new impairment, appears in the record but ALJ Hoenninger did not properly consider it.  Here, changes in inflammation indicators, a new diagnosis of fibromyalgia, new symptoms of nausea and vomiting, and an increasingly unpredictable and varying level of pain are changes of the kind *Chavez* envisioned would inform an adjudicator of a plaintiff's possible "changed circumstance."  (Admin. R. at 336-38, 328, 380, 53, 42-43.)  After dismissing Plaintiff's personal testimony about changed circumstances and finding his level of function greater than alleged without explanation, ALJ Hoenninger concluded Plaintiff had not rebutted the presumption of nondisability.  (Admin. R. at 23.)

To support this decision, the Commissioner argues Plaintiff has not demonstrated prejudicial error with respect to several findings.  First, a 2014 finding of improved inflammation does not support a changed circumstance; second, a diagnosis of fibromyalgia is based on nothing new; third, a showing of a flare-up does not depart from the record; fourth, Plaintiff's main medications have not changed; fifth, 2015 lab results "are OK," which does not show deterioration; and sixth, 2016 treatment notes indicate improvement.  (Defs.' Resp., ECF No. 14 at 7-8.)  These arguments rely on select findings which tend to support ALJ Hoenninger's conclusion, an approach inconsistent with this court's obligation to consider record as a whole.

Central to Plaintiff's alleged changed condition is the unpredictable nature of his symptoms.  (Admin. R. at 43.)  The flare-ups, which ultimately dissipate after a period of pain, now allegedly lasted longer than they did prior to ALJ Wilson's 2014 decision.  (Admin. R. at 42.)

Since then, Plaintiff was reinitiated to methotrexate, and has required more frequent injections than prior to the adjudicated period in the 2014 Hearing, due to an increase in pain. (Admin. R. at 81, 52.) Plaintiff has also experienced complications with periods of nausea and vomiting. (Admin. R. at 45.)  Plaintiff's sleep quality has worsened, a result he attributes to pain throughout the day and that causes pain the next day. (Admin. R. at 44.)

*Chavez* directs adjudicators to make specific findings absent a rebuttal of the presumption of nondisability, and the Commissioner's argument to the contrary is unpersuasive.  This court may not substitute its judgment for that of the ALJ by reweighing evidence, but that rule applies only when the evidence is susceptible to more than one rational interpretation. *Robbins,* 466 F.3d at 882; *Edlund*, 253 F.3d at 1156; *Burch*, 400 F.3d at 679.  Here, the court does not find ALJ Hoenninger's position as one of multiple interpretations of the evidence, but rather an error. Applying *Chavez*, the record as a whole demonstrates clear changes in Plaintiff's circumstances.

## II.  Plaintiff's Testimony

Plaintiff argues ALJ Hoenninger improperly rejected his subjective testimony.   To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis ("symptom testimony analysis").  *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929 (2019).  The first stage requires the ALJ to determine whether a claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage, absent affirmative evidence the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir.

2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).   The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony.   *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.   *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

The Commissioner acknowledges that specific, clear, and convincing reasons must be provided to discount Plaintiff's subjective testimony, but contends the evidence, when compared to Plaintiff's complaints, show greater functionality than Plaintiff claims he possesses.   To support this contention of inconsistency, the Commissioner cites the repeatedly presence of the word "stable" in the medical record.   After listing examples, the Commissioner argues this evidence clears the "more-than-a-mere-scintilla" threshold – the incorrect standard for the second stage of the symptom analysis.   Where the ALJ has provided objective evidence of a medically determinable impairment which could be reasonably expected to produce pain or symptoms alleged and no malingering is alleged, the ALJ may reject the claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons.   *Brown-Hunter v. Colvin*, 806 F.3d at 493.

Plaintiff argues ALJ Hoenninger did not make the specific findings required here and argues the ALJ's assessment of Plaintiff's symptom testimony is not supported by substantial evidence.   Plaintiff's symptom testimony demonstrates medically determinable impairments that could cause the symptoms alleged, which ALJ Hoenninger affirmed.   The ALJ made no finding

of malingering and the record does not support such a finding. Therefore, the court examines ALJ

Hoenninger's second-stage analysis.

   *A. Daily Activities*

   In her second-stage analysis, ALJ Hoenninger focused on Plaintiff's daily activities as a

juxtaposition to his alleged symptoms. She found Plaintiff's ability to perform daily activities in

"direct contrast" to his testimony regarding limitations. Specifically, after ALJ Hoenninger

acknowledged Plaintiff's claim of inability to maintain employment and sustain work activity, she

found his ability to care for his hygiene, prepare meals, perform some household chores, and shop

for groceries as needed, watch movies, listen to music, and read in conflict with his allegations.

Although a plaintiff's daily activities are one factor an ALJ may consider in determining credibility

of subjective testimony, an ALJ still must make sufficiently specific findings to allow a court to

conclude the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d

at 493. Here, ALJ Hoenninger's finding that Plaintiff's daily activities contradicted his allegations

is neither clear nor convincing.

   Plaintiff's daily activities do not bear directly on his ability to carry out sustained

employment within the parameters of his RFC during a forty-hour work week. Further, ALJ

Hoenninger wrote about these activities broadly and did not include caveats to Plaintiff's abilities.

For example, to point to Plaintiff's ability to shop for groceries as needed overlooks his testimony

that he cannot drive himself, and that he instead relies on someone else to drive him to the grocery

store once per month, on average. Plaintiff's hobbies also do not speak to his ability to perform

sustained work in a forty-hour work week, and do not clearly demonstrate any contradiction to

Plaintiff's testimony. Additionally, while Plaintiff is able to perform some household chores, he

testified he is unable to maintain the cleanliness of his home as he once was able. He testified at

the 2018 hearing he cannot take care of his house, and testified in his 2016 Function Report he had some difficulties with virtually every aspect of the personal care categories detailed on the questionnaire.  (Admin. R. at 257-59.)

ALJ Hoenninger provided no specific, clear, or convincing reasons for finding Plaintiff's basic household cleaning, infrequent rides to the grocery store, or hobbies have any bearing on Plaintiff's ability to complete a structured, regular, and continuous work week.  Plaintiff argues the Social Security Act does not require a disability claimant be totally unable to engage in any form of mental or physical activity.  *Fair v. Bowen*, 885 F.2d597 (9th Cir. 1989).  Challenging as improper ALJ Hoenninger's comparison of daily activity to employment, Plaintiff quotes *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014):

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.  *Garrison* at 1016.

On this point, ALJ Hoenninger did not sufficiently examine the record as a whole, which reveals one of the primary challenges of Plaintiff's impairment:  the variable nature of his condition.  ALJ Hoenninger's interpretation of Plaintiff's daily activities is conclusory, and the court finds Plaintiff's symptom testimony regarding his daily activities should not be discredited.

*B.  Medical Evidence*

Medical evidence is another second-step factor in the symptom testimony analysis.  *Ghanim*, 763 F.3d at 1163.  ALJ Hoenninger cites specific language that Plaintiff's condition is generally stable, and his medication has been stable, but this narrow focus necessarily precludes consideration of the whole record.  Dr. Nakashima noted an elevation in C-reactive proteins since 2013 and opined Plaintiff's time off-task at work and absent days due to his impairments would

be higher.  Plaintiff testified to experiencing more flare-ups which lasted longer in duration, worsening sleep problems which reduced his mobility and increased his pain the next day, changes in his medications, and a new diagnosis of fibromyalgia.  It is the totality of Plaintiff's symptoms over time that Plaintiff alleges demonstrates a worsening trajectory and a decreased ability to carry out sustained competitive employment.

As Plaintiff alleges, the key is whether Plaintiff would be able to sustain activity for a full workday, based on the objective medical evidence provided.  Although ALJ Hoenninger focused her analysis on the stability of Plaintiff's medication regimen, this alone does not undermine the credibility of his testimony.  As the record and testimony have established, Plaintiff has been introduced and reintroduced to different medications since ALJ Wilson's 2014 decision.  He was reinitiated on methotrexate, a drug which Dr. Nakashima specifically excluded prior to the 2014 Hearing because Plaintiff's condition was improving.   Following this period, Plaintiff was prescribed methotrexate once again, at an increased dosage.  (Admin. R. at 327, 332.)  Still, Plaintiff's symptoms have not been alleviated, and he alleges the symptoms overall have worsened. This increase in daily pain, flare-ups, sleep difficulties, and bouts of nausea and vomiting all occurred while Plaintiff was being treated with medications.  (Admin. R. at 331-33, 340-41.)

ALJ Hoenninger, in considering Plaintiff's medical history, cited entries which described his overall condition as stable, specifically noting that his medications had not changed since Dr. Nakashima increased the methotrexate dosage in 2016.  (Admin. R. at 26, 332.)  She also seemed to dismiss Plaintiff's history of flare-ups – the basis of his assertion he is not able to sustain employment during a forty-hour work week – as a departure from his supposed stability. Specifically, ALJ Hoenninger stated Plaintiff's chronic pain is "stable."  (Admin. R. at 26.) "Stable," in the context of a chronic pain syndrome, does not amount to clear or convincing

evidence Plaintiff's symptom testimony should be discounted.  While Plaintiff's condition may have been "stable," stability is relative in the context of a chronic pain condition.  Plaintiff's point is his pain and other symptoms, even if stable, still demonstrate a change in Plaintiff's condition since the prior 2014 decision from ALJ Wilson.  Looking at the record as a whole, ALJ Hoenninger has not articulated why a finding of stability in Plaintiff's current chronic pain symptoms continues to support the finding of non-disability, and the court finds, based on the medical evidence, there is no clear and convincing reason to discount Plaintiff's testimony.

III.  Dr. Nakashima's Opinion

Plaintiff argues ALJ Hoenninger improperly rejected Dr. Nakashima's medical evidence. ALJ Hoenninger found Dr. Nakashima's 2018 opinion did not differ greatly from his 2013 opinion, and because it was given little weight in 2014, ALJ Hoenninger again gave his opinion little weight in the present case.  (Admin. R. at 27.)  ALJ Hoenninger applied *Chavez* and found no new and material medical evidence to suggest increased severity of Plaintiff's conditions, and she gave little weight to Dr. Nakashima's opinion for the same reason.  (*Id*.)  Ultimately, the she gave little weight to Dr. Nakashima's opinions and conclusions, and more weight to the opinions of the state agency medical consultants, Dr. Wiggins and Dr. Westfall.

Plaintiff asserts, and the court already has found, Dr. Nakashima's opinion in the present case does differ significantly from his 2013 opinion.  Plaintiff contends Dr. Nakashima's new medical opinion is consistent with the medical evidence, and ALJ Hoenninger did not provide clear and convincing reasons supported by substantial evidence in the record as a whole for rejecting the treating physician's opinion.

The Commissioner argues ALJ Hoenninger reasonably assigned greater weight to the opinions of Dr. Wiggins and Dr. Westfall because their unchallenged opinions constituted

substantial evidence. The Commissioner asserts Dr. Nakashima's opinion is not entitled to controlling weight, and his opinion conflicts with his, therefore providing a specific and legitimate reason under *Bayliss v. Barnhart* to reject Dr. Nakashima's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

As the final arbiter, the ALJ is responsible for resolving any conflicts or ambiguities in the medical evidence. *Tommasetti*, 533 F.3d at 1041-42 (9th Cir. 2008) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)); *accord Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.") (quoting *Andrews*, 53 F.3d at 1039). But where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating physician, that opinion is credited as true as a matter of law. *Lester*, 81 F.3d at 834. Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a reviewing physician. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). The medical opinion of a claimant's treating physician is given "controlling weight," so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician, *Lester*, 81 F.3d at 831, but it may constitute substantial evidence if consistent with other evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989). If the ALJ accepts the contradictory opinion, the ALJ must set out a detailed and

thorough summary of the facts and conflicting medical evidence, explain their interpretation, and make findings. *Id.* The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680-81 (quoting *Magallanes*, 881 F.2d at 750).

ALJ Hoenninger's decision to attribute such little weight to Dr. Nakashima's 2018 opinion is not sufficiently justified. She cited as the primary reason for effectively rejecting Dr. Nakashima's testimony that ALJ Wilson, in his 2013 decision, gave the 2013 opinion little weight. (Admin. R. at 27.) Applying *Chavez*, ALJ Hoenninger found no new material evidence of an increase in the severity of Plaintiff's symptoms since the last hearing, and concluded Dr. Nakashima's opinion should be given the same weight given to it in 2013. However, this justification for ascribing such little weight to Plaintiff's treating physician presumes *Chavez* was properly applied by ALJ Wilson. This court already has found as error the ALJ's *res judicata* application. Furthermore, the court does not find clear and convincing reasons in support of ALJ Hoenninger's ultimate rejection of Dr. Nakashima's opinion, because her findings did not consider the relativity of Dr. Nakashima's changes in opinion.

Although her decision references it, ALJ Hoenninger ignored the substantial amount of evidence suggesting Plaintiff's condition worsened between 2013 and 2018. In his 2018 opinion, Dr. Nakashima opined Plaintiff would be off-task at work for substantially more time, twenty-five percent of the workday, compared to his assessment of fifteen percent in 2013, and that he would require up to four days absence from work per month, an increase from his opinion finding three days of absence in 2013. (Admin. R. at 27.) These changes alone are significant: Plaintiff's treating physician testified Plaintiff would be off task almost twice as much and would require

even more time off than he previously opined – both of which were found insufficient to sustain work by Hincks in the 2018 hearing.

ALJ Hoenninger also stated Dr. Nakashima's testimony was inconsistent with the medical evidence, based on an incorrect application of *Chavez*. Many of Plaintiff's alleged changes in condition since the 2014 hearing are explicitly based on Dr. Nakashima's own testimony and medical records. Dr. Nakashima diagnosed Plaintiff with fibromyalgia, found Plaintiff's elevated-C reactive protein indicated increased inflammation, reinitiated Plaintiff on methotrexate, and later increased the dosage to address Plaintiff's worsening symptoms. These very reasons are among those this court already has found constituted an improper application of *res judicata* and which negates the finding that Dr. Nakashima's opinion is inconsistent with the medical record. Rejecting Dr. Nakashima's opinion for "the same reasons identified by the previous ALJ" dismissed five years of documented changes in Plaintiff's condition since ALJ Wilson's decision. (Admin. R. at 81.) The record as a whole establishes that Dr. Nakashima's opinion is sufficiently consistent with the changes in Plaintiff's condition since the 2013 opinion, which is also consistent with Plaintiff's own subjective testimony.

The Commissioner asserts the opinions of Dr. Westfall and Dr. Wiggins were still reasonably assigned greater weight. According to the Commissioner, because Dr. Nakashima's opinion conflicts with those opinions, they therefore constitute substantial evidence and Dr. Nakashima's opinion is not entitled to controlling weight. (Def.'s Resp. Br. 14.) The Commissioner further argues that because the opinions conflict, the ALJ could discount the opinion of Dr. Nakashima for a specific and legitimate reason, and Dr. Wiggins's and Dr. Westfall's opinions constitute a specific and legitimate reason in their own right. (*Id.*) These arguments are unavailing in light of *Lester*, which specifically holds the opinion of a non-

examining physician by itself cannot constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831. The court does not find substantial evidence supports the decision to reject Dr. Nakashima's testimony, and finds Dr. Nakashima's testimony should be credited as true.

## IV. Vocation Expert Hypothetical

Applying the objective medical evidence to Plaintiff's ability to work, ALJ Hoenninger questioned Hincks at the 2018 Hearing, and cited in her decision Hincks's conclusion Plaintiff could perform past relevant work. ALJ Hoenninger's hypothetical to Hincks, however, did not include the limitations to which Dr. Nakashima testified, including more than four absences per month and being off-task twenty-five percent or more of the workday. Plaintiff asserts ALJ Hoenninger has not provided clear and convincing reasons to discount Dr. Nakashima's testimony nor his own testimony that his unpredictable flare-ups of pain and episodes of vomiting and fatigue would result in a disabling number of absences from the workplace and a disabling amount of time off task. Furthermore, Hincks himself testified a person who would be absent two or more times each month or who would be off task for twenty-five percent of the workday would not be able to sustain competitive employment. (Tr. 62-63.)

### A. Incomplete Hypothetical

Plaintiff asserts ALJ Hoenninger posed an invalid hypothetical to Hincks at the 2018 Hearing by omitting Dr. Nakashima's testimony about Plaintiff's limitations, which the court has found were improperly rejected. Plaintiff asserts the court should credit the testimony as a matter of law. In *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988), the Ninth Circuit stated hypothetical questions posed to the vocational expert must set out all the limitations and

restrictions of the particular claimant.  If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the opinion based thereon has no evidentiary value.

Accordingly, Plaintiff argues Hincks's testimony, if based only upon ALJ Hoenninger's allegedly incomplete limitations, is therefore incomplete.  Plaintiff asserts a decision not based on substantial evidence should be set aside.  The Commissioner counters that the hypothetical includes all limitations ALJ Hoenninger found credible.  Therefore, the Commissioner argues, ALJ Hoenninger was not required to include discredited limitations in the hypothetical to Hincks. Plaintiff insists ALJ Hoenninger's hypothetical improperly omitted Dr. Nakashima's credible testimony about Plaintiff's functional limitations, and thus the hypothetical lacks evidentiary value.  The question is whether Dr. Nakashima's rejected testimony, if credited as true, would establish limitations Hincks's hypothetical should have included.

Because the hypothetical posed by ALJ Hoenninger improperly rejected limitations set out by Dr. Nakashima, the court finds the ALJ erred in relying on Hincks' testimony to determine Plaintiff was not disabled under the Act.  The court finds a complete hypothetical must include the limitations Dr. Nakashima described.  In the 2018 Hearing, ALJ Hoenninger asked Hincks to add to the incomplete hypothetical the effect of an individual missing two or more days of work each month, and Hincks determined the individual would not be able to perform any of the past jobs and would not be able to participate in the national economy.  (Admin. R. at 62.)  Hincks also testified, in response to questioning from Plaintiff's attorney, that an individual who would be off-task for twenty-five percent of the workday beyond normal breaks would not be competitively employable.  (Admin. R. at 63.)  Hincks further testified an individual who could reach, handle, and finger bilaterally occasionally at most, would be precluded from any work in the national economy.  (*Id.*)  Because ALJ Hoenninger did not provide clear and convincing evidence to

discount Dr. Nakashima's testimony as the court found in the second section of this opinion, the court finds she erred in relying on the vocational expert's incomplete hypothetical.

### B.   Credit-As-True Doctrine and Remand

The remaining question, which is within the court's discretion, is whether to remand for further proceedings of for immediate payment of Benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).   A remand for an award of Benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.   *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke*, 379 F.3d at 593).   The court may not award Benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.   *Strauss*, 635 F.3d at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of Benefits directed where:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.   *Id*.   The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.   *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348).   The court should decline to credit testimony when "outstanding issues" remain.   *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first element of the credit-as-true doctrine is satisfied, because the ALJ erred by rejecting Dr. Nakashima's testimony without clear and convincing reasons and then posed an

incomplete hypothetical to Hincks.  The second element is satisfied as well, because there are no other outstanding issues related to Hincks' testimony or Dr. Nakashima's testimony which need to be resolved before a disability determination can be made.  In turn, the third element also is satisfied; at the 2018 hearing, Hincks testified that when applying Dr. Nakashima's functional limitations to the hypothetical, there would be no suitable work in the national economy for Plaintiff, thus rendering him unemployable.

Had ALJ Hoenninger properly considered Dr. Nakashima's testimony regarding Plaintiff's functional limitations and his medical opinions overall, the court finds she would have been required to find Plaintiff disabled.  Plaintiff's symptom testimony and Dr. Nakashima's testimony establish Plaintiff's consistently unpredictable and unmanageable condition, with limitations that inhibit Plaintiff's ability to function for eight hours per day in a forty-hour workweek such that he could not sustain competitive employment.  Since the 2014 decision, Plaintiff was diagnosed with fibromyalgia, received new medications and increased dosages of existing medications, experienced a decline in mobility, demonstrated a propensity for absenteeism at a significantly higher level than before, and experienced a wider range of symptoms within the "good day" and "bad day" variation of his different medical conditions.  When Hincks specifically considered at the 2018 hearing the functional limitations of Plaintiff's worsened condition, his testimony established Plaintiff plainly would be unable to sustain any employment in the national economy.

This court has found that Plaintiff's symptom testimony was improperly discounted, and Dr. Nakashima's evidence was improperly rejected.  The court concludes that remand for further proceedings has no utility here.  *See Garrison,* 759 F.3d at 1021 ("allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons" would serve no useful purpose); *Thomas E.B. v. Comm'r Soc. Sec.,* Case No. 6:18-cv-02109-BR, 2019 WL

5889308, at *4 (D. Or. Nov. 12, 2019) (declining to remand for further proceedings where ALJ failed to provide legally sufficient reasons for discounting physician's opinions). Having reviewed the record extensively and carefully, the court finds no evidence casting doubt on the legitimacy of Plaintiff's assertions or on Dr. Nakashima's assessments. The court therefore declines to remand this case for further proceedings and instead remands for an immediate calculation and payment of benefits.

<em>Conclusion</em>

The Commissioner erred in the application of *res judicata*, the rejection of Plaintiff's symptom testimony, and the rejection of Dr. Nakashima's medical opinion. Accordingly, the Commissioner's final decision should be REVERSED and REMANDED for an immediate award of benefits.

IT IS SO ORDERED.

DATED this 21st day of September, 2020.

JOHN V. ACOSTA
United States Magistrate Judge